Samuel JACKSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A05–0105–CR–203.

Court of Appeals of Indiana.

Dec. 4, 2001.

Donald C. Swanson, Jr., Fort Wayne, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Samuel L. Jackson appeals his convictions for murder and residential entry, a Class D felony, and a finding that he is an habitual offender. We affirm.

### Issues

Jackson presents the following five issues for our review:

I.  whether the trial court improperly denied his continuance motion;

II.  whether the trial court improperly denied his request for funds to hire a DNA expert;

III.  whether the trial court improperly refused his proposed instruction on circumstantial evidence;

IV.  whether the prosecutor engaged in misconduct; and

V.  whether the State presented sufficient evidence to support his convictions.

### Facts

The evidence most favorable to the convictions reveals that on June 18, 2000, Glendora Shorts had an argument and physical altercation with Jackson, her boyfriend of ten years. As Jackson left Shorts' house, he threatened to kill her and her children. Shortly after midnight, Shorts' daughter, D.B., left Shorts' upstairs bedroom where she had been watching a movie with her mother and went to the bathroom, which was on the same floor as the bedroom. While in the bathroom, D.B. heard four "punching" sounds. Transcript p. 123. She left the bathroom and found that her mother's bedroom door was closed and could not be opened all the way. D.B. was able to see someone wearing a red shirt through a crack in the door; Jackson had been wearing a red shirt earlier in the day. D.B. then heard a voice she clearly recognized as Jackson's say "I'm naked and you can't come in here, your mom know [sic] I'm here." Transcript p. 124. She ran downstairs to the basement bedroom of her brother, R.S., who called 911. R.S. then heard someone that he was "positive" was Jackson yelling at D.B. Transcript p. 159. After police arrived at the residence, D.B. noticed that the front door was open, and she went upstairs with an officer to Shorts' bedroom. Shorts was found lying in a pool of blood. A pathologist determined Shorts died from multiple blunt force injuries to the head consistent with being beaten with a baseball bat; a bat with red stains and hair stuck to it was found on the front porch. The State charged Jackson with murder and residential entry on June 22, 2000; the habitual offender allegation was added in July 2000. The trial court set a jury trial date of January 16–19, 2001. On December 15, 2000, the State added two witnesses to its witness list: Karen Berka and Mary Reed, a serologist and a DNA analyst, respectively, with the Indiana

State Police. On January 2, 2001, the State received and subsequently provided to Jackson's counsel Reed's DNA laboratory results. Jackson's counsel filed a continuance motion on January 8, for the purpose of deposing Reed before trial and having more time to analyze her report. At a hearing conducted on January 10, Jackson's counsel also orally requested funds to hire a DNA expert. The trial court denied both the continuance and the expert funds request. The trial began as scheduled on January 16. The jury returned guilty verdicts for both charges and found Jackson to be an habitual offender. The trial court sentenced Jackson to an aggregate term of ninety-five years, and this appeal follows.

## I. Denial of Continuance Motion

■ Jackson's first claim is that the trial court committed reversible error by denying his continuance motion. He concedes that the motion fell outside the parameters for continuances under Indiana Code Section 35-36-7-1. Rulings on nonstatutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind.2000). An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999). Continuances for additional time to prepare for trial are generally disfavored, and courts should grant such motions only where good cause is shown and such a continuance is in the interest of justice. *Id.*

■ Jackson first alleges that his receipt of Reed's formal DNA report two weeks before trial gave him insufficient time to analyze properly the results it contained. However, the State indicated at the hearing on the motion that Reed had verbally informed the prosecutor's office of her test results on December 21, 2000, and that the prosecutor immediately communicated those results to Jackson's counsel in a typed letter. The report issued on January 2, 2001, was a formalization of the test results. Thus, Jackson's counsel had in fact nearly four weeks, not two, in which to consider Reed's test results. Additionally, defense counsel essentially had the same amount of time to analyze the DNA results as did the State.

■ The second basis for Jackson's continuance motion was that counsel needed more time to depose Reed, who was added to the State's witness list on December 15, 2000. We believe over thirty days' notice before trial was sufficient to permit defense counsel to accomplish this deposition. The record indicates that Jackson's counsel did in fact depose Reed and had also personally interviewed her before trial. We conclude the trial court did not abuse its discretion in denying Jackson's continuance motion. *Cf. Stanger v. State*, 545 N.E.2d 1105, 1117 (Ind.Ct.App.1989) (holding trial court did not abuse its discretion in denying defendant's continuance motion sought after State added witnesses twelve days before trial where defendant failed to show that he was unable to meet with the witnesses or discover their intended testimony), *overruled in part on other grounds by Smith v. State*, 689 N.E.2d 1238 (Ind. 1997).

## II. DNA Expert

■ In connection with the previous issue, Jackson also claims the trial court erred in denying the oral request for funds to hire his own DNA expert he made at the January 10, 2001 hearing. Defense counsel stated that he needed the expert to "educate" him in relation to Reed's DNA analysis report. Hearing Transcript p. 28. The trial court stated that it needed

more information from defense counsel as to why he needed an expert before allowing him to hire one. Decisions about expert services for indigent defendants are committed to the trial court's sound discretion, and such decisions are not overturned absent an abuse of that discretion. *Scott v. State*, 593 N.E.2d 198, 200 (Ind.1992). The trial court is not required to appoint any expert the defendant believes may be helpful, and the defendant bears the burden of demonstrating the need for the appointment, specifying precisely how he or she would benefit from the requested services. *Id.* We are cognizant that there were several *Scott* factors in this case that favored allowing Jackson to hire a DNA expert: the services would have borne upon an issue outside of the common experience of the average person; analysis of DNA evidence is outside the scope of the typical attorney's services; Jackson was facing a charge of murder, the most serious crime in our penal code; and the State was relying upon its own expert.[1] *See id.* at 200–01.

Still, these factors were insufficient to *require* the trial court to approve the hiring of a DNA expert for Jackson at public expense. First, we question whether Jackson's request to hire an expert five days before trial can be called timely; "[a] court need not appoint an expert if the defendant's request is untimely...." *Id.* at 201. Although Reed's official DNA report was not completed until January 2, 2001, defense counsel admitted that the fact DNA analysis was being conducted in the case "did not take me by surprise or unawares in this case." Hearing Transcript p. 22. As of December 15, 2000, counsel was made aware that Reed was a potential witness for the State; he was made aware on or about December 21, 2000, of the results of Reed's analysis. We believe there was substantial opportunity for defense counsel to request a DNA expert before January 10, 2001.

More importantly, "[i]f there is cumulative evidence of a defendant's guilt, the need to attack one aspect of that evidence with an expert's services is diminished." *Id.* at 201. Another consideration is whether the State's principal evidence linking the defendant to the crime is sufficiently technical that it is commonly the subject of expert testimony. *Id.* at 200. The DNA evidence in this case revealed the following: DNA consistent with Shorts only was found on a pillow case, bed sheet, comforter, and night shirt; from fingernail scrapings on Shorts' right hand; and from a baseball bat. DNA consistent with Jackson only was found on his right and left thumbs, on scratches from his chin and neck, and in one sample from his t-shirt (which was worn during the altercation between Jackson and Shorts and which he was still wearing when apprehended by the police). On another baseball bat, on Jackson's right palm, and on another sample taken from Jackson's t-shirt, DNA consistent with Jackson was found, and Shorts could not be ruled out as a contributor of additional alleles, or DNA fragments. Scrapings under Shorts' left hand finger-

---

1. Our supreme court has held that because of the precise physical measurements and chemical testing involved in DNA analysis, a defendant is not generally entitled to hire his own DNA expert where the results of the DNA analysis are not subject to dispute and the expert hired by the State is "truly neutral"— i.e., an independent laboratory of some kind. *Harrison v. State*, 644 N.E.2d 1243, 1253 (Ind. 1995). Here, Reed cannot be characterized as "truly neutral," by virtue of her employment with the Indiana State Police. Thus, the *Harrison* holding does not apply here, and we must analyze Jackson's issue differently. Additionally, the State did not seek the death penalty against Jackson, so Indiana Criminal Rule 24(C)(2), governing the hiring of defense experts in capital cases, did not apply.

nails revealed DNA consistent with Shorts and additional alleles for which Jackson could not be ruled out as a contributor. Most of this information was of little assistance to the State in identifying Jackson as Shorts' murderer. In particular, the physical altercation between Shorts and Jackson that happened earlier in the day and which also involved a baseball bat (used by Shorts against Jackson)[2] and the splitting of Shorts' lip by Jackson, causing her to bleed, arguably was the source of much of the DNA. The most damaging DNA evidence was the possibility that Jackson's DNA was underneath Shorts' left fingernails, suggesting (in combination with a scratch on the right of Jackson's neck) that Shorts may have struggled with Jackson when he struck her with a baseball bat.

Although the DNA evidence was not unfavorable to the State, there was ample cumulative evidence supporting the prosecution's case, including the positive voice identification by D.B. and R.S., persons who had known Jackson for ten years, and Jackson's threats to Shorts earlier in the day. The testimony of D.B. and R.S. constituted the State's principal evidence in this case, and was sufficient to support Jackson's conviction. *Bane v. State*, 424 N.E.2d 1000, 1002 (Ind.1981) (holding voice identification evidence is independently sufficient to sustain a conviction).

It is not evident that requesting an expert for the purpose of educating counsel is specific enough to justify the disbursement of public funds without some indication that such education could not be reasonably obtained by other means. Here, the trial court asked defense counsel to seek other means of educating himself on DNA evidence and to restate his request for a continuance or hiring an expert if those means proved insufficient. We cannot say the trial court abused its discretion in denying the request to hire an independent DNA expert based on the reasons presented for hiring one at the January 10 hearing.

Finally, we note, in connection with this issue and with the continuance motion, that a pre-trial conference was held on the morning of trial. There is nothing in the transcript to indicate that defense counsel still had concerns about being unprepared for trial or that he had been unable to educate himself adequately on DNA analysis; there is no mention of his earlier continuance motion or request to hire an expert. This is critical, because the trial court at the conclusion of the January 10 hearing invited defense counsel to file another motion to continue or restate his request to hire an expert if he was unable to prepare for trial after speaking with Reed and seeking information on DNA evidence from other sources. Given this sequence of events and the fact that there was substantial, cumulative evidence of Jackson's guilt apart from the DNA evidence, we see no indication that Jackson was prejudiced by the denial of his continuance motion and his request to hire a DNA expert. To demonstrate reversible error, the defendant must show that error occurred and that it was prejudicial. *State v. Eubanks*, 729 N.E.2d 201, 205 (Ind.Ct. App.2000), *trans. denied.* Thus, even if we were to conclude it was error to deny Jackson's motions, such error would not have required reversal of Jackson's convictions.

**2.** There were apparently two baseball bats found at the residence. We are unable to determine from the trial transcript which of the bats the State believed was used to kill Shorts, which was used to assault Jackson, or whether the same bat was used for both purposes.

### III. Jury Instruction

At trial, Jackson requested that the trial court give the following instruction to the jury:

Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact.

Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.

It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. *Where proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence.*

Appendix p. 101 (emphasis added). The trial court, however, refused to give the last sentence of this instruction to the jury. This particular sentence in the instruction need only be given where the evidence against the defendant is wholly circumstantial. *Clemens v. State,* 610 N.E.2d 236, 243 (Ind.1993). Jackson claims that all of the evidence against him in this case was circumstantial, thus requiring the trial court to give his tendered instruction in full. We disagree.

Jackson was placed at the murder scene at the precise moment and place of its commission through the voice identification of two persons who had known him for ten years. We are not aware of any Indiana case conclusively establishing whether voice identification evidence is "direct" or "circumstantial." Direct evidence is defined as evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption. *Davenport v. State,* 749 N.E.2d 1144, 1149(Ind.2001). By contrast, "circumstantial evidence immediately establishes collateral facts from which the main fact may be inferred." *Nichols v. State,* 591 N.E.2d 134, 136 (Ind.1992). "In cases based solely on circumstantial evidence, there are generally no witnesses to the alleged crime." *Davenport,* 749 N.E.2d at 1150.

Some opinions of our supreme court have, in dicta, suggested different views of whether voice identification evidence is direct or circumstantial. For example, in *Bane v. State,* 424 N.E.2d 1000, 1002 (Ind. 1981), the court said "[t]he wife, while admitting to uncertainty and to having failed to pick appellant from the voice array, did support the [voice] identification of appellant in a *direct manner* at trial." (Emphasis added). On the other hand, in *Easley v. State,* 427 N.E.2d 435, 436 (Ind. 1981), the court said "[i]n-court identifications on the basis of voice alone have been held sufficient to sustain a conviction. Here, the voice identification was buttressed by *other circumstantial evidence* which corroborated the identification." (Emphasis added) (internal citations omitted).

We hold that voice identification evidence that places the defendant at the crime scene at the precise time and place of the crime's commission is direct evidence. It is an identification of the defendant as the perpetrator of the crime based on the use of the witness' personal senses, even if the sense involved is hearing, not sight. Our holding today comports with the holdings in the majority of jurisdictions having considered this issue. *See* 70 A.L.R.2d 995, 1011, 1960 WL 13200, § 6,

*Identification of Accused by his Voice* ("In some cases it has been urged, frequently for the purpose of gaining instructions of aid to the accused, that voice recognition testimony is circumstantial evidence. The general rule, however, is that testimony identifying the accused by recognition of his voice is direct evidence."). Having held that voice identification testimony is direct evidence, Jackson was not entitled to his tendered instruction on circumstantial evidence.

### IV. Prosecutorial Misconduct

■ During closing arguments, the prosecutor stated "[i]f [Shorts] could say anything to you she would say to you, listen—" Transcript p. 537. At this point, Jackson objected to the prosecutor's attempt to invoke Shorts' voice "from beyond the grave." The trial court overruled the objection and allowed the prosecutor to proceed:

> She would tell you if you're beating someone to death with a baseball bat, whose hair ... you heard Officer Meihls, where is that hair found, on the end of the bat where you would beat somebody with it. Who's [sic] hair is going to be on that. The person that's getting their head beat in or the person who is holding the bat. She's [sic] say use your common sense. She'd also say listen to what Officer Meihls said. When you're swinging a bat, you know how, the force of the bat is throwing the blood away from you....

Transcript p. 538. Jackson claims this commentary constituted prosecutorial misconduct.

We see no indication in the transcript that Jackson ever requested an admonishment based upon these comments or that he moved for a mistrial because of them.

> Not only must a defendant object to alleged misconduct, he or she must also request an appropriate remedy. Generally, the correct procedure is to request an admonishment. However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial.

*Etienne v. State,* 716 N.E.2d 457, 461 (Ind. 1999) (internal citations omitted). Jackson's failure to request an admonishment or move for a mistrial results in waiver of the issue. *See id.*

### V. Sufficiency of the Evidence

■ Jackson claims "[t]here was insufficient evidence as a matter of law regarding the identification [of] the Appellant as the perpetrator of the murder." Appellant's Brief p. 23. His brief, however, contains no acknowledgment of our narrow standard of review when considering the sufficiency of the evidence. Indiana Appellate Rule 46(A)(8)(b) states that an appellant's brief "must include for each issue a concise statement of the applicable standard of review." We conclude that this failure to cite the appropriate authority constitutes waiver of this argument. *See Johnson v. State,* 693 N.E.2d 941, 954 (Ind.1998). Waiver notwithstanding, we are convinced that the evidence in this case is more than sufficient to support Jackson's convictions.

### Conclusion

The trial court did not abuse its discretion in denying Jackson's continuance motion and request to hire a DNA expert. The circumstantial evidence instruction tendered to the jury was proper, in light of the existence of direct evidence against Jackson in this case through the voice identification testimony of D.B. and R.S. Jackson waived appellate review of his claims of prosecutorial misconduct and in-

sufficient evidence. We affirm the convictions in all respects.

Affirmed.

MATTINGLY–MAY, J., and SULLIVAN, J., concur.