**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Mar 07 2012, 8:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**E. THOMAS KEMP**
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLINTON E. SAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A05-1108-CR-403 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Charles K. Todd Jr., Judge
Cause No. 89D01-1002-FB-3

**March 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Clinton E. Sams appeals his conviction for Class B felony Dealing in a Controlled Substance[1] and the determination that he is a Habitual Substance Offender.[2] Sams raises numerous issues for appeal which we restate as:

I. whether the trial court erred in allowing the State to belatedly amend the charging information to include a habitual substance offender count;
II. whether the deputy prosecutor committed prosecutorial misconduct by making certain statements in the presence of the jury; and
III. whether the trial court committed fundamental error by questioning defense counsel regarding Sams's ability to participate at trial.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 3, 2009, Sams sold pills to a confidential informant who was working with the Wayne County Sheriff's Department. The transaction was recorded with an audio recording device and a video camera. Laboratory testing showed that the pills were hydrocodone tablets, a schedule III controlled substance.

On February 1, 2010, the State charged Sams with Class B felony dealing in a schedule III controlled substance. On April 14, 2011, the State alleged that Sams was a habitual substance offender. Sams objected to the belated filing of the habitual substance offender count, and on May 17, 2011, the trial court conducted a hearing, at the conclusion of which it overruled Sams's objection. On June 21, 2011, Sams was convicted by a jury of Class B felony dealing in a controlled substance. Sams subsequently admitted that he was a

---

[1] Ind. Code § 35-48-4-2(a)(1)(C) (2009).

[2] Ind. Code § 35-50-2-10 (2009).

habitual substance offender.  On July 19, 2011, the trial court imposed an aggregate eleven

year sentence.  This appeal follows.

## DISCUSSION AND DECISION

### I.  Whether the Trial Court Erred in Allowing the State to Belatedly Amend the Charging Information to Include a Habitual Substance Offender Count

Sams contends that the trial court erred in allowing the State to belatedly amend the

charging information to include a habitual substance offender count because the State failed

to show good cause for the belated filing, and also because the State filed the count in

vindictive retaliation for his decision to depose certain witnesses.  Indiana Code section 35-

34-1-5(e) (2009) provides as follows:

> An amendment of an indictment or information to include a habitual offender
> charge under … [Indiana Code section] 35-50-2-10 must be made not later
> than ten (10) days after the omnibus date.  However, upon a showing of good
> cause, the court may permit the filing of a habitual offender charge at any time
> before the commencement of the trial.

In the instant matter, the omnibus date was June 8, 2010.  Prior to the omnibus date,

the parties began engaging in plea negotiations.  The plea negotiations continued up to

approximately mid-April of 2011.  On April 14, 2011, after it became clear that Sams would

not agree to the terms of a then-offered plea agreement, the State amended the charging

information to include a habitual substance offender count.  Sams objected to the belated

filing of the habitual substance offender count.  The trial court heard arguments from the

parties relating to the belatedly filed count.  During this hearing, Sams argued that the State

belatedly filed the habitual substance offender count without good cause in vindictive

3

retaliation for his decision to depose certain witnesses. The State rejected Sams's claim and argued that it did not file the belated habitual substance offender count at an earlier date because plea negotiations were ongoing. The State indicated that it filed the habitual substance offender count shortly after it learned that Sams would not plead guilty to the underlying charge.

The trial court determined that the State had shown good cause for the belated filing by proving that it had refrained from filing the habitual substance offender count because of the parties' then-ongoing plea negotiations.[3] We review a trial court's finding of good cause for an abuse of discretion. *Jackson v. State*, 938 N.E.2d 29, 39 (Ind. Ct. App. 2010); *Land v. State*, 802 N.E.2d 45, 53 (Ind. Ct. App. 2004), *trans. denied.* "An abuse of discretion occurs 'only where the decision is clearly against the logic and effect of the facts and circumstances." *Land*, 802 N.E.2d at 53 (quoting *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999)).

In the instant matter, the trial court determined that the State demonstrated good cause for the delay in filing the habitual substance offender count because of the ongoing plea negotiations, and Sams does not dispute the State's claim that it filed the habitual substance offender count shortly after plea negotiations ended. Accordingly, we cannot conclude that the trial court abused its discretion by finding good cause in this case. *See Johnican v. State*, 804 N.E.2d 211, 215 (Ind. Ct. App. 2004) (providing that the trial court did not abuse its

---

[3] The trial court also determined that Sams was not prejudiced by the belatedly filed habitual substance offender count.

4

discretion in determining that the State demonstrated good cause for belatedly filing a habitual offender count when the State had refrained from filing the count due to the parties' ongoing plea negotiations); *Land*, 802 N.E.2d at 53 (providing that the trial court acted within its discretion in determining that the State demonstrated good cause for the belated filing of the habitual offender count in light of the parties' ongoing plea negotiations).

Sams also argues that the trial court erred in allowing the State to belatedly file the habitual substance offender count because it was filed in vindictive retaliation for his decision to depose certain witnesses. In making this claim, Sams argues that the deputy prosecutor indicated that she would file the habitual substance offender count if "the depositions went forward." Appellant's Br. p. 8. However, the deputy prosecutor's full statement regarding the decision as to whether the habitual substance offender count would be filed reads as follows:

> Subsequently, [Defense Counsel] was advised that Mr. Sams did, in fact, qualify as habitual substance offender, however, *if he signed that existing plea agreement, it would not be filed*. We had a few pre-trials, each time that was discussed and then depositions were to be set in this case and at that time, I advised [Defense Cousnel] that if the depositions went forward, I'd be filing the Habitual Substance Offender *if the plea was not signed*.

Tr. pp. 19-20 (emphases added). In reading this statement in its entirety, it is clear that the deputy prosecutor informed counsel that the habitual substance offender count would be filed if Sams did not accept the existing plea offer, not if he chose to depose certain witnesses. Accordingly, we conclude, as was found by the trial court, that, despite Sams's claim to the contrary, the State did not file the belated habitual substance offender allegation in retaliation

5

for his decision to depose certain witnesses, but rather because plea negotiations failed.

The Indiana Supreme Court has held that "amending an information to include an habitual offender count after the failure of plea negotiations is a justifiable exploitation of legitimate bargaining leverage and does not constitute prosecutorial vindictiveness." *Vaxter v. State*, 508 N.E.2d 809, 812 (Ind. 1987) (citing *State v. Hicks*, 453 N.E.2d 1014 (Ind. 1983); *Baker v. State*, 425 N.E.2d 98, 103 (Ind. 1981)). Thus, in light of this Indiana Supreme Court precedent, we further conclude that the belated filing of the habitual substance offender count does not constitute prosecutorial vindictiveness. As such, trial court did not err in allowing the State to file the belated habitual substance offender count after the parties' plea negations failed.

## II. Whether the Deputy Prosecutor Committed Prosecutorial Misconduct by Making Certain Statements in the Presence of the Jury

Sams next contends that the deputy prosecutor committed prosecutorial misconduct by making certain statements in the presence of the jury. Specifically, Sams claims that the deputy prosecutor committed prosecutorial misconduct by (A) discussing sentencing options during voir dire; (B) making disparaging remarks about defense counsel during voir dire; and (C) commenting on defense counsel's failure to deny the charges during the State's rebuttal to defense counsel's closing argument.

> When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). We must then consider whether the alleged misconduct placed [Sams] in a position of grave peril to which he should not have been subjected. *Id.* In judging the propriety of the prosecutor's remarks, we consider the statement in the context of the argument as [a] whole. *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind. Ct. App.

6

1999)....

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

*Hand v. State*, 863 N.E.2d 386, 393-94 (Ind. Ct. App. 2007).

We initially note that Sams neither requested an admonishment nor moved for a mistrial when the deputy prosecutor made *any* of the comments that he argues constitute prosecutorial misconduct. Therefore, Sams has waived these arguments and must show that any misconduct resulted in fundamental error to succeed on appeal. *See id.* at 394.

**A. Discussing Sentencing Options During Voir Dire**

Sams claims that the deputy prosecutor committed prosecutorial misconduct by discussing potential sentencing options during voir dire. In support of this claim, Sams relies on this court's opinion in *Lainhart v. State*, 916 N.E.2d 924, 933-35 (Ind. Ct. App. 2009), in which this court concluded that certain statements by the prosecutor regarding sentencing were improper. While we generally agree with the court's conclusion in *Lainhart*, we believe that its conclusion can be easily be distinguished from the instant matter.

7

In *Lainhart*, the prosecutor responded to a potential juror who said that "he would have to be pretty sure the defendant was guilty in order to vote for conviction" by giving an unsolicited description of the potential range of punishment that a trial court could impose if the defendant was convicted. *Id.* at 393-94. The *Lainhart* court concluded that this unsolicited description of the potential range of punishment facing the defendant was improper because "it presented the problem of the jury considering something other than guilt or innocence on the evidence during its deliberations." *Id.* at 394 (internal quotation omitted).

Here, unlike in *Lainhart*, the deputy prosecutor did not provide an unsolicited description of the potential range of punishment facing Sams. During voir dire, a potential juror stated that he believed that "it's a moral issue to try to put somebody in jail." Tr. p. 72. The deputy prosecutor responded by explaining that the jury is not responsible for imposing any penalty, only determining guilt or innocence. The prospective juror indicated that he understood that the jury is not responsible for imposing any penalty following conviction, but stated that he did not think he could fulfill the role of juror. Later, defense counsel asked another potential juror,

> [W]hat's at risk? If a person is convicted in a criminal proceeding , what's at risk for them? … Their freedom, right? In extreme cases, what? … Their life is at risk, right? Not – not in this particular case.… but there are very severe consequences for a guilty verdict.

Tr. p. 89. Subsequently, and apparently in response to defense counsel's line of questioning, the deputy prosecutor again reiterated that the jury is only responsible for determining guilt

8

and not responsible for imposing any potential penalty. The deputy prosecutor stated

> And there's a wide range of sentencing options that can be imposed upon a conviction and [defense counsel] mentioned one of them but there's also probation, work release, community service, drug counseling. There's a lot of – there's a whole array of options a judge would have based on the facts of the case and based on the law.

Tr. p. 124. The deputy prosecutor asked another potential juror whether he understood that the trial court had these options, and when the potential juror indicated that he did, responded with, "And so you don't just presume that a guilty conviction is going to mean prison?" Tr. p. 124. The prospective juror responded "no." Tr. p. 124.

While we agree that generally, it is inappropriate for a prosecuting attorney to discuss potential penalties that may be imposed if a defendant is found guilty during voir dire, here, we cannot say that the deputy prosecutor's comments were improper, much less resulted in fundamental error that would make a fair trial impossible. The deputy prosecutor's comments regarding the potential penalties facing an individual convicted of criminal acts were made in conjunction with statements reiterating that the jury was not responsible for considering what penalties to impose on a convicted individual in response to an answer given by a prospective juror and statements made by defense counsel. Moreover, Sams does not point to any evidence suggesting that the deputy prosecutor's comments denied him a fair trial or subjected him to undeniable and substantial potential for harm. As such, we cannot say that the statements made by the deputy prosecutor amounted to fundamental error.

**B. Making a Disparaging Remark about Defense Counsel During Voir Dire**

Sams also claims that the deputy prosecutor committed prosecutorial misconduct by

9

making a disparaging remark about defense counsel during voir dire. In support, Sams argues that the disparaging comment about defense counsel made before the jury by the deputy prosecutor constitute unprofessionalism and misconduct.

Here, the allegedly disparaging remark was made during the deputy prosecutor's questioning of a prospective juror who indicated that she had taken a class taught by defense counsel at Ivy Tech. The prospective juror indicated that the class was taught solely online, and commented that she "really thoroughly enjoyed the class. I learned a significant amount. I think that he has a, you know, brilliant mind as to how [the legal system] works." Tr. p. 131. The prospective juror continued to tell the deputy prosecutor that she very much enjoyed the class, to which the deputy prosecutor said "that's the first time I've heard somebody say such glowing things about [defense counsel,]" and defense counsel replied, "Me too." Tr. p. 131.

Upon review, contrary to Sams claim, we cannot conclude that the deputy prosecutor's comment was "a clear attack on [defense counsel], encouraging the jury to see [him] as being less than capable." Appellant's Br. p. 11. Rather, we conclude that the deputy prosecutor's comment, when considered with defense counsel's reply, appears to be a well-intended, but poor attempt to inject humor into the proceedings. Again, Sams did not point to any evidence suggesting that the deputy prosecutor's comment denied him a fair trial or subjected him to undeniable and substantial potential for harm. As such, we cannot say that the statement made by the deputy prosecutor amounted to fundamental error.

### C. Commenting on Defense Counsel's Failure to Deny the Charges During the State's Rebuttal to Defense Counsel's Closing Argument

Sams also argues that the deputy prosecutor committed prosecutorial misconduct by commenting on defense counsel's failure to deny the charges during his rebuttal to defense counsel's closing argument. Sams acknowledges that "[p]rosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable," *Dumas*, 803 N.E.2d at 1118, but claims that here, the deputy prosecutor's statement was improper because it "was in no way in response to the closing argument of the defendant." Appellant's Br. p. 13.

> In determining whether a prosecutor's comments are error, fundamental or otherwise, we look to see if the comments in their totality are addressed to the evidence rather than the defendant's failure to testify. If so, there are no grounds for reversal. *Hopkins v. State*, 582 N.E.2d 345, 348 (Ind. 1991); *Hill v. State*, 517 N.E.2d 784, 788 (Ind. 1988). Arguments that focus on the uncontradicted nature of the State's case do not violate the defendant's right to remain silent. [*Isaacs v. State*, 673 N.E.2d 757, 764 (Ind. 1996)].

*Carter v. State*, 686 N.E.2d 1254, 1262 (Ind. 1997).

Sams argues that the deputy prosecutor's statement during his rebuttal to defense counsel's closing argument was an impermissible indirect comment on Sams's failure to testify. We disagree. The challenged statement provides as follows:

> Ladies and gentlemen, why doesn't [defense counsel] just come up here and say his guy didn't do it? Why – why hint around the fringes of everything or along the edges and why not just say the guy didn't do it, the guy didn't commit the crime instead of going into all these – his interpretation of reasonable doubt and these other things. Just simply get up here and say hey, the guy didn't do it. Because I don't think he can say that because his guy did do it.

Tr. pp. 329-330. Sams did not object to this statement, and the deputy prosecutor continued

11

on and thereafter made an eight-page argument rebutting defense counsel's claims regarding the alleged deficiencies in the State's case. The overwhelming majority of the deputy prosecutor's statement on rebuttal, if not all, addresses the evidence, not the defendant's failure to testify.

While we believe that the deputy prosecutor's statement was erroneous, in so far as it infringed upon Sams's right to not testify in the criminal proceedings, *See Rowley v. State*, 259 Ind. 209, 216, 285 N.E.2d 646, 650 (1972), we cannot conclude that this statement alone amounted to fundamental error. Again, Sams did not object to the statement at trial and does not point to any evidence suggesting that the deputy prosecutor's comment denied him a fair trial or subjected him to undeniable and substantial potential for harm. Thus, in reading the deputy prosecutor's comments on rebuttal in their totality, we cannot conclude that these comments constituted fundamental error. *See Carter*, 686 N.E.2d at 1262.

Furthermore, to the extent that Sams argues that the cumulative effect of each of the alleged acts of misconduct constituted fundamental error, we reiterate that with regard to each act of alleged misconduct, Sams fails to point to any evidence suggesting that the deputy prosecutor's comments prejudiced him, denied him a fair trial, or subjected him to undeniable and substantial potential for harm. Accordingly, we cannot conclude that the deputy prosecutor committed prosecutorial misconduct such that would rise to the level of fundamental error.

**III. Whether the Trial Court Committed Fundamental Error by Questioning**

**Defense Counsel Regarding Sams's Ability to Participate at Trial**[4]

Sams also contends that the trial court committed fundamental error by questioning defense counsel regarding Sams's ability to participate in trial after Sams requested a continuance of trial because he claimed to have suffered a stroke a week or two before trial was scheduled to begin. Defense counsel indicated that it did not have documentation from any medical professional indicating that Sams was medically unfit to stand trial. Sams claimed that he should be granted a continuance because he saw "double visions" and got dizzy "whenever [he] move [sic] [his] head around a lot." Tr. p. 35. The trial court allowed defense counsel to question Sams about his condition before questioning defense counsel about whether, based on his conversations with and observations of his client both pre- and post-alleged stroke, he believed that Sams could adequately participate during trial.

Sams did not object to this procedure at trial. Accordingly, Sams has waived his challenge to the trial court's decision to question defense counsel prior to the beginning of trial, and, as a result, we will review Sams's challenge only so far as it relates to the question of whether the trial court's questioning of defense counsel constituted fundamental error. *See generally, Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (providing that a claim is waived if defendant fails to raise a contemporaneous objection at trial and can be reviewed

---

[4] Initially, we note that Sams couches his argument as whether the trial court committed fundamental error which subjected him to ineffective assistance of trial. In support, Sams relies on authority relating to ineffective assistance of counsel resulting from deficient performance by trial counsel. However, as Sams's challenge relates solely to the actions of the trial court and does not allege any deficient representation by his trial counsel, we conclude that Sams's claim is more akin to the question of whether the trial court committed fundamental error by effectively denying Sams representation by counsel at trial. As such, Sams is not precluded from raising a future ineffective assistance of counsel claim.

13

on appeal only if the reviewing court determines that fundamental error occurred).

Again,

> [t]he fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

*Id*.

Upon review, we observe that although Sams includes the words "fundamental error" in the heading of his argument on page fourteen of his Appellate Brief, Sams has failed to set forth the standard of review for fundamental error or include any argument or relevant authority supporting his claim of fundamental error. As such, we conclude that Sams has waived this challenge on appeal. *See generally, Jackson v. State*, 758 N.E.2d 1030, 1037 (Ind. Ct. App. 2001) (providing that failure to comply with Indiana Code Appellate Rule 46(A)(8)(b), which requires that an appellant's brief include a statement of the applicable standard of review for each issue, results in waiver of that issue for appellate review); *Hollowell*, 707 N.E.2d at 1025 (providing that failure to support each contention with argument, including citations to relevant legal authorities, results in waiver of that issue for appellate review).

Waiver notwithstanding, Sams has again failed to show what prejudice, if any, he suffered as a result of the trial court questioning defense counsel about Sams's ability to

14

participate at trial. Sams merely claims that the trial court's actions amount to a deprivation of counsel at a crucial stage of the proceeding and was highly prejudicial, meriting a reversal of his convictions. We disagree. The trial court merely questioned defense counsel regarding whether counsel believed Sams was mentally and physically healthy enough to proceed to trial, based on his observations of his client both pre- and post-stroke. The trial court conducted this line of questioning prior to the beginning of voir dire, outside of the presence of the prospective jurors. Sams fails to point to anything in the record indicating that he suffered any prejudice as a result of the trial court's decision to question defense counsel about Sams's ability to participate at trial or that he was subjected to an undeniable and substantial potential for harm. As such, we cannot say that the trial court's actions constituted fundamental error.

The judgment of the trial court is affirmed.

KIRSCH, J., and BARNES, J., concur.

15