**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Public Defender Department
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BLAINE JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1201-CR-15 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1106-FB-093

**February 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Blaine Johnson appeals his conviction for battery, as a Class C felony, following a jury trial. He presents the following issues for our review:

1. Whether the trial court abused its discretion when it denied his motion to continue trial.

2. Whether the State presented sufficient evidence to support his conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 24, 2011, Johnson and his girlfriend, B.J., were traveling together in B.J.'s car near Henryville when they began to argue. At some point, Johnson, who was driving, reached over, grabbed B.J.'s hair, and began banging her head into the dashboard. Johnson pulled out clumps of B.J.'s hair from her scalp. Johnson also punched B.J. several times in the face. B.J. began to cry and apologized to Johnson. Johnson then pulled out a knife and threatened to "paint the forest" with her blood. Transcript at 392. B.J. eventually opened the car door with her foot and reached over to pull the key out of the ignition. Johnson bit B.J.'s finger so hard that it bled. Johnson struggled with B.J. for the car key, and the key flew out of the passenger door. B.J. then tried to exit the car, but Johnson pulled her back in by her hair and bit her nose so hard that she thought he had bitten her nose off completely.

B.J. eventually freed herself and began running through the parking lot where they had stopped. She was screaming for help when Corporal Leverett of the Jeffersonville

Police Department saw her and observed that she was "covered in blood from head to toe." Id. at 140. Corporal Leverett then radioed for assistance and arrested Johnson.

The State charged Johnson with criminal confinement, as a Class B felony; battery, as a Class C felony; intimidation, as a Class C felony; battery, as a Class A misdemeanor; and being an habitual offender. Johnson moved for a speedy trial. The State moved to continue the trial twice because B.J. could not be located and was not available to testify at trial. Then, during a pre-trial conference on October 11, 2011, the State informed the trial court that it had not yet found B.J.'s location, and the jury trial was scheduled for November 9. But on October 28, the State informed Johnson's counsel that B.J. was incarcerated in Kentucky.

On November 4, Johnson moved to continue the trial, but the trial court denied that motion. The jury trial began on November 9, but B.J. had absconded, and the State did not know her whereabouts. The State moved for another continuance, and the trial court ordered that the trial would resume the following Monday. B.J. did show up on Monday, November 14, and she testified that Johnson had been texting her threatening emails. In particular, Johnson had texted B.J. and told her not to testify against him and to encourage the State to drop the charges against him. B.J. also testified regarding the offenses and the injuries she sustained. The jury found Johnson guilty of battery, as a Class C felony; battery, as a Class A misdemeanor; and with being an habitual offender. The trial court entered judgment of conviction only for the Class C felony battery and sentenced Johnson to eight years enhanced by eight years for the habitual offender adjudication, for a total sentence of sixteen years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One:  Motion to Continue

Johnson first contends that the trial court abused its discretion when it denied his motion to continue the trial.  He concedes that the motion fell outside the parameters for continuances under Indiana Code Section 35-36-7-1.  Rulings on non-statutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice.  Jackson v. State, 758 N.E.2d 1030, 1033 (Ind. Ct. App. 2001).  An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances.  Id.  Continuances for additional time to prepare for trial are generally disfavored, and courts should grant such motions only where good cause is shown and such a continuance is in the interest of justice.  Id.

In support of his motion to continue trial on November 4, Johnson stated in relevant part:

> 3.	That Counsel for the Accused was notified of the complaining witness' location on or about October 28, 2011, fourteen (14) days prior to trial.
> 4.	Counsel for the Accused requests this continuance in an effort to speak to the complaining witness, review such witness' statements, and to contact rebuttal witnesses or other persons, if necessary.
> * * *
> 6.	That the ends of substantial justice require this Continuance to be granted, to ensure that the Defendant's rights to prepare a vigorous defense [sic].

Appellant's App. at 55-56.

On appeal, Johnson maintains that, "[a]lthough the record is unclear, it would appear [that] Johnson did not have any true access to [B.J.] prior to requesting a

4

continuance." Brief of Appellant at 12. The trial court advised Johnson that his counsel would have time to interview B.J. before she testified at trial. But Johnson asserts that "[t]he trial court's offer to allow the defense brief access to this witness immediately prior to her testimony at trial left Johnson with no meaningful opportunity to explore any potential inconsistencies between her recollection of the events in question and what she previously told investigating officers." Id.

But the State points out that when, fourteen days prior to trial, it notified defense counsel of B.J.'s whereabouts, defense counsel declined the opportunity to depose B.J. And after the trial court denied Johnson's motion to continue the trial, defense counsel indicated that he was considering "driv[ing] there [to see B.J.]" over the weekend prior to her scheduled testimony. Transcript at 6. And while the record does not indicate that defense counsel met with B.J. that weekend, he did speak with B.J. prior to her appearance at trial, and she answered "some questions as to the facts and circumstances of this matter." Id. at 12. Defense counsel added that B.J. "answered those questions reasonably." Id.

Johnson has not demonstrated that he was prejudiced by the trial court's denial of his motion to continue trial. Johnson was afforded the opportunity to depose or interview B.J. during the two weeks preceding trial, but he declined. Further, Johnson was able to interview B.J. prior to trial. While Johnson asserts that his cross-examination of B.J. was "compromised by the trial court's refusal to grant a continuance to allow him to properly prepare for the testimony of the State's key witness[,]" he does not explain, with specificity, how his trial preparation or cross-examination was compromised. Brief of

5

Appellant at 15.  Without such an explanation, Johnson cannot show that the trial court abused its discretion when it denied his motion to continue trial.  See Liddell v. State, 948 N.E.2d 367, 373 (Ind. Ct. App. 2011) (holding no prejudice in denial of motion to continue where defendant "cite[d] no deficiencies in the cross-examination performed, and he advance[d] no alternative strategy or additional subjects that he would have explored if afforded more time to prepare.")

Finally, to the extent that Johnson contends that he was denied his right to confront B.J. under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution, Johnson merely reiterates that he was "prejudiced by the trial court's refusal to grant him a continuance to adequately prepare effective cross-examination of [B.J.]"  Brief of Appellant at 15.  But, again, Johnson had the opportunity to depose or interview B.J. during the two weeks before trial and declined to do so.  Moreover, Johnson does not explain in detail how his cross-examination of B.J. was adversely impacted by his alleged lack of access to B.J. prior to trial.  This court has held that it is "only where there is a total denial, during cross examination, to a crucial area bearing upon the credibility of a state witness that Sixth Amendment concerns are raised."  Hossman v. State, 482 N.E.2d 1150, 1156 (Ind. Ct. App. 1985), trans. denied. Johnson has failed to demonstrate prejudice on these grounds.

## Issue Two:  Sufficiency of the Evidence

Johnson next contends that the State presented insufficient evidence to support his conviction.  When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm

if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

To prove battery, as a Class C felony, the State was required to show that Johnson knowingly or intentionally touched B.J. in a rude, insolent, or angry manner resulting in serious bodily injury, namely, bit her on the face and finger causing bleeding and pain. See Ind. Code § 35-42-2-1. Serious bodily injury is defined in relevant part as bodily injury that causes extreme pain. Ind. Code § 35-31.5-2-292. Johnson's sole contention on appeal is that the State did not prove beyond a reasonable doubt that his conduct caused B.J. to experience extreme pain.

But B.J. testified that Johnson "bit into [her] face really, really hard. He bit into [her] face so hard that it broke [her] nose and [she] had to have stitches. [She] actually thought he [had] bit [her] nose off." Transcript at 395. B.J. testified further that she knew that sounded "a little ridiculous, but at that moment the pain and the blood" indicated to her that that is what had happened. Id. B.J. testified that she was "covered in blood" by the time police arrived. Id. at 396. And she described the pain from the bite on her face as being "[r]eally, really, really bad." Id. at 397. B.J. testified that the "ambulance drivers . . . assured [her] that [her] nose was still attached to [her] face, but it was really badly gashed open" and they "predicted" that she would need stitches. Id.

7

B.J. got six stitches on her face.  At the time of trial, B.J. had a scar on her face from the bite.

We hold that the evidence is sufficient to show that B.J. sustained extreme pain as a result of the battery.  See, e.g., Buckner v. State, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006) (holding evidence sufficient to show serious bodily injury where victim testified that defendant "repeatedly struck her with his hands and fists, causing her severe pain and leaving marks on her body").  Johnson's argument to the contrary is merely a request that we reweigh the evidence, which we will not do.  The State presented sufficient evidence to support Johnson's conviction for battery, as a Class C felony.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.