## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 20 2015, 9:57 am
CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| **APPELLANT PRO SE** | **ATTORNEYS FOR APPELLEE** |
| Thomas Campbell<br>New Castle, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Kyle Hunter<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Campbell,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Indiana Department of Correction,[1] | March 20, 2015<br><br>Court of Appeals Case No.<br>33A01-1407-MI-302<br><br>Appeal from the<br>Henry Circuit Court<br><br>The Honorable Kit C. Dean Crane,<br>Judge |

---

[1] We note that Campbell's Notice of Appeal named the State of Indiana as the appellee, but his Appellant's Brief named the State of Indiana and the Indiana Department of Correction ("DOC") as the respondent-appellee; the Attorney General filed an appearance and identified the DOC as the appellee, but its Appellee's Brief identified the State of Indiana as the appellee. In the trial court proceedings, the parties and the trial court generally identified the DOC as the named defendant, either alone or in conjunction with the State of Indiana. We name the DOC as the appellee-defendant, pursuant to our Supreme Court's direction in *Bleeke v. Lemmon*, 6 N.E.3d 907, 917 n.3 (Ind. 2014) (noting State may not be named as party-defendant in parolee's suit, which alleged that DOC's disciplinary sanctions for refusal to participate in mandatory sex offender program violated his constitutional rights, because Indiana Constitution precludes suits against State without State's consent). *See also Harp v. Ind. Dep't of Highways*, 585 N.E.2d 652, 661 (Ind. Ct. App. 1992)

**Kirsch, Judge.**

[1] Thomas Campbell, an inmate in the Indiana Department of Correction ("DOC"), received disciplinary sanctions his refusal to participate in the Indiana Sex Offender Management and Monitoring Program. Thereafter, Campbell, *pro se,* filed a "Motion to Clarify the Constitutional Parameters of the Indiana Sex Offender Monitoring and Management (SOMM) Program," which the trial court denied. On appeal, Campbell raises two issues that we consolidate and restate as: whether the trial court properly denied relief to Campbell.

[2] We affirm.

## Facts and Procedural History

[3] On September 19, 1996, Campbell was convicted of Class B felony child molesting and sentenced to twenty years. He is currently incarcerated in DOC's New Castle Correctional Facility. Pursuant to DOC's Executive Directive #12-53 ("the Executive Directive"), Campbell was required to participate in the Indiana Sex Offender Management and Monitoring Program

(Department of Highways is state entity and naming it as party in caption was defect, but Department waived any objection by failing to file motion to dismiss).

("SOMM program"), which is a court-approved sex-offender treatment program. The Executive Directive provides that the SOMM program is mandatory for all adult offenders with a history of a sex offense conviction. Offenders are advised in the Executive Directive that a failure to participate or complete the program shall result in disciplinary action. Specifically, the offender who refuses to participate is charged with a violation of Code 116 and, if found guilty of the Code 116 violation, shall be demoted to credit class III and shall be instructed to participate in the SOMM program again. If the offender again refuses to participate, he is charged with a Code 116 violation, and, if the evidence supports a finding of guilt, the offender shall be retained at credit class III, and 180 days of earned credit time shall be deprived, if available. In addition, an offender who refuses to participate in the SOMM program is deemed "NOT to demonstrate a pattern consistent with rehabilitation" and is disqualified from earning any additional earned credit time for completing educational, vocational, or substance abuse programs.

*Appellant's App.* at 31 (emphasis in original). Offenders who pleaded not guilty to, but were subsequently convicted of, the sexual offense charges may be temporarily exempted from participation in "the SOMM Program Phase II sex offender treatment program" if their conviction (not sentence) for that offense is in an appeal status or post-conviction relief status. *Id.*

[4] In November 2013, Campbell refused to participate in one or more requirement(s) of the SOMM program.[2] As a result, he was charged with a violation of Code 116. The following day, a disciplinary hearing was held, at the conclusion of which Campbell was found guilty of the violation and discipline was imposed, including, (1) disciplinary segregation, (2) loss of privileges, including phone, (3) loss of 180 days of earned credit time, and (4) demotion from credit class I to credit class III. *Id.* at 29.

[5] On March 5, 2014, Campbell, *pro se,* filed with the trial court a "Motion to Clarify the Constitutional Parameters of the Indiana Sex Offender Monitoring and Management (SOMM) Program" ("Motion"). In his Motion, Campbell asserted that the SOMM program was unconstitutional because components of the program rose to the level of compulsion and incrimination prohibited by the Fifth Amendment. Specifically, Campbell argued that the SOMM program: (1) unconstitutionally compels an inmate to make incriminating admissions of uncharged misconduct, including that which occurred prior to a conviction, and thereby violates Fifth Amendment protections; and (2) extends a prisoner's sentence length if the prisoner refuses to participate in the program, by demoting a prisoner's credit class from credit class I to credit class III and taking away earned credit time, which, Campbell claimed, punishes a prisoner

---

[2] The record before us includes a "Conduct Summary," which reflects that, in April and August 2011, Campbell lost privileges and was demoted in credit class based on "failure to participate in mandatory program," although it is not clear whether those sanctions concerned a failure to participate in the SOMM program. *Appellant's App.* at 32.

"with a longer sentence for asserting his innocence or exercising the Fifth Amendment privilege." *Id*. at 17. Campbell also argued in his Motion that the SOMM program was unconstitutional because in the third phase of the program, offenders must submit to polygraph tests, the results of which might be reported to law enforcement agencies without immunity for the offender, thus potentially subjecting the offender to subsequent prosecutions. Campbell's Motion requested that the trial court "grant him relief from the SOMM program," namely overturn the disciplinary sanctions that DOC imposed upon him, and he also urged the trial court to "clarify the constitutional parameters of the [] SOMM program." *Id*. at 21.

[6] On May 7, 2014, the State filed a response in opposition to Campbell's Motion, asserting that the issue raised by Campbell concerning the constitutionality of the SOMM program, both on its face and as applied to him, had been recently addressed by the Indiana Supreme Court in *Bleeke v. Lemmon*, 6 N.E.3d 907 (Ind. 2014), which was decided on April 16, 2014, after Campbell had filed his Motion. On May 16, 2014, the trial court denied Campbell's Motion, finding that *Bleeke* addressed the constitutional parameters of the SOMM program and that the SOMM program was constitutional on its face and as applied to Campbell.[3] Campbell now appeals.

---

[3] On June 6, 2014, Campbell filed a motion to correct error. He argued that the DOC's disciplinary action "deprived" him of a "liberty interest," and he asked that he be restored to credit class I and all of his earned credit time (180 days) be returned to him. *Id*. at 67. On June 16, 2014, the trial court issued a written entry

Campbell argues that the trial court erred by failing to address the constitutionality of the SOMM program as raised in his Motion and maintains that the trial court should have ordered the DOC to restore him to credit class I and return his earned credit time. Where, as here, Campbell raised a constitutional challenge to the SOMM program, we will review *de novo* the trial court's denial of his Motion. *See Baker v. State*, 747 N.E.2d 663, 636 (Ind. Ct. App. 2001) (constitutional challenge is matter of law and is reviewed *de novo*), *trans. denied*.

Initially, we note, Campbell's appellate brief fails to include a statement of the applicable standard of review to guide our decision, and it thereby fails to comply with our Rules of Appellate Procedure. Ind. Appellate Rule 46(A)(8)(b) (argument must include for each issue concise statement of applicable standard

---

stating that Campbell's motion to correct error was a "non-conforming pleading," and the court did not consider it. *Id*. at 74.

[4] As the State observes in its brief, the general rule is that DOC inmates have no common law, statutory, or federal constitutional right to review of DOC disciplinary decisions in state courts, and a petition for habeas corpus is the proper avenue to make that challenge. *Appellee's Br*. at 4; *Holmes-Bey v. Butts*, 20 N.E.3d 578, 581 (Ind. Ct. App. 2014). However, as the State further recognizes, state courts do have jurisdiction when an allegation is made that the DOC violated an inmate's constitutional rights. *Holmes-Bey*, 20 N.E.3d at 581 (citing *State v. Moore*, 909 N.E.2d 1053, 1057 (Ind. Ct. App. 2009) (state trial court possessed subject matter jurisdiction to review inmate's deprivation of credit time and privileges where inmate claimed that sanctions and deprivation occurred because he refused to participate in SOMM program on basis that it violated his Fifth Amendment right against self-incrimination), *trans. denied*). Campbell's claims, like those of the defendant in *Moore*, allege a violation of the Fifth Amendment, and the trial court had subject matter jurisdiction to rule on them.

of review). By failing to provide a statement of the applicable standard of review, Campbell has waived any argument that the trial court committed error when it denied his Motion. *See Jackson v. State,* 758 N.E.2d 1030, 1037 (Ind. Ct. App. 2001) (noting that failure to comply with Indiana Appellate Rule 46(A)(8)(b), which requires that appellant's brief include statement of applicable standard of review for each issue, results in waiver of that issue for appellate review). Waiver notwithstanding, we discern no trial court error.

[9] In his Motion, Campbell argued that the SOMM program is unconstitutional because it includes elements of compulsion and incrimination, in violation of his Fifth Amendment rights. He asked the trial court to determine the constitutional parameters of the SOMM program and grant him relief by returning his earned credit time and class credit I inmate classification. The trial court denied Campbell's Motion, based on *Bleeke*, which was decided shortly after Campbell filed his Motion with the trial court. In *Bleeke*, our Supreme Court extensively and thoroughly addressed the constitutional concerns with the SOMM program that Campbell raised in his Motion, and which he presents to us now on appeal, and ultimately, the *Bleeke* Court found "no constitutional flaw in [the SOMM program]." 6 N.E.3d at 912.

[10] In reaching its decision, the *Bleeke* Court considered the requirements and constitutional implications of the SOMM program, and it began its analysis by first explaining its history:

> Indiana's SOMM program was established in 1999 as a statewide program aimed at reducing the recidivism of offenders convicted of sex

crimes. It is managed by the DOC[.] . . . Offenders are targeted for the SOMM program based on their conviction for certain specified sex-related offenses[.]

*Id.* at 923. There are three phases to the SOMM program. The first is a mandatory consent and assessment phase that occurs while a targeted offender is incarcerated, typically upon entry into the prison system. Those who do consent and participate are assessed and evaluated for their recidivism risk, treatment needs, and other issues that would impact their participation in the program. A failure to participate in the SOMM program is a violation of the DOC's disciplinary code. In the second phase, offenders participate in a treatment program based on their particular recidivism risk; the programs are risk-based, sex-offender-specific, or based on psychoeducational needs. *Id.* at 924. The third phase of the SOMM program is available for parolees, but not probationers, and "is designed to support and optimize the process of re-entry into the community[.]" *Id.* A team of professionals is assigned to the parolee, consisting of a parole agent, a district coordinator, a treatment provider, and a polygraph examiner. The parolee is subject to "intensive" conditions and stipulations that the parolee must follow. *Id.* The mandatory polygraph examinations require an offender to disclose sexual history, including behaviors that would be criminal offenses, with no immunity for the disclosures.

Bleeke was on parole at the time he filed his request for declaratory judgment and petition for injunction with the trial court. He argued on appeal that the SOMM program's requirement that he admit his guilt for the offense of which he was convicted, even though he consistently maintained his innocence,

coupled with the fact that failure to complete the program constituted a parole violation for which he could lose credit time or other prison privileges, constituted a violation of his Fifth Amendment privilege against self-incrimination. He also argued that the requirement that he disclose all sexual behaviors under a mandatory polygraph program, with no immunity for the disclosures, was a Fifth Amendment violation. Our Supreme Court, however, rejected those claims. *Id*. at 935, 939.

[13] In so doing, the *Bleeke* Court acknowledged, "It seems clear that the potential for self-incrimination is present," given that the program "is primarily aimed at treatment" but includes "a degree of investigatory intent." *Id*. at 925, 927. However, the Court determined, the SOMM program's requirements do not compel an offender to yield his or her Fifth Amendment privilege. The Court recognized that the statutorily created good time credits and classifications, the purpose of which are to encourage inmates of penal institutions to behave well, are not constitutionally required. *Id*. at 933. "[T]here is no automatic, blanket, or unqualified entitlement to . . . favorable credit status, or any other prison privileges[.]" *Id*. at 934 n.20. Furthermore, our legislature has provided that those privileges may be revoked for an inmate's refusal to participate in the SOMM program. Indiana Code section 35-50-6-5 states in pertinent part:

> A person may . . . be deprived of any part of the credit time the person has earned . . . [i]f the person is a sex offender (as defined in IC 11-8-8-5) and refuses to participate in a sex offender treatment program specifically offered to the sex offender by the department of correction while the person is serving a period of incarceration with the department of correction.

Ind. Code § 35-50-6-5(a)(6).[5] Significantly, contrary to Campbell's claim on appeal, removal or reduction in an inmate's earned credit time or credit classification does not extend an offender's period of incarceration beyond that of his or her original sentence; rather, it reduces the availability of an early release date. *Bleeke*, 6 N.E.3d at 934. Simply put, pursuant to *Bleeke*, the State is permitted to present all SOMM inmates with a constitutionally permissible choice:

> participate in the SOMM program and maintain a more favorable credit status and/or privileges within the prison system or a favorable assignment in a community transition program, or refuse to participate and instead serve out the full term for which [the offender] had been lawfully convicted.

*Id*. at 934. The *Bleeke* Court rejected the proposal that an offender "may have his cake and eat it too" by refusing to participate in the SOMM program, which is aimed at rehabilitation, but yet still receive full benefits of a shortened sentence from favorable credit class or credit time. *Id*. at 935.

[14] The Court in *Bleeke* likewise rejected Bleeke's claim, also raised by Campbell, that the third phase of the SOMM program, requiring parolees to submit to polygraph tests and make disclosures of sexual conduct, is unconstitutional. An offender's early release from imprisonment to parole is a privilege afforded to the offender for compliance with prison rules and policies, including the

---

[5] We note that before an inmate may be deprived of earned credit time, he or she must be granted a hearing to determine guilt or innocence and is entitled to other procedural safeguards, such as twenty-four hour notice and opportunity to present testimony and evidence, and a written explanation supported by evidence. Ind. Code § 35-50-6-5(b).

SOMM program. *Id*. at 938. Once on parole, an offender must participate in the SOMM program or else face the potential consequence of returning to prison to serve out the full term, but non-participation would not extend the fixed term nor would it take away previously earned credit time. *Id*. at 939. Thus, contrary to Campbell's assertion, the SOMM program does not extend incarceration and thereby violate a defendant's Fifth Amendment privilege. Just as the *Bleeke* Court found with respect to the DOC's ability to reduce or remove credit time or demote credit classification in the second phase of the SOMM program, a parole board may, during the third phase of the SOMM program, offer a constitutionally permissible choice to a convicted offender: comply with parole requirements, or serve out the full sentence that was imposed pursuant to lawful conviction. *Id*.

[15] Campbell has failed to establish that the trial court committed any error when it determined that the SOMM program is constitutional, on its face and as applied to him, and denied his Motion.

[16] Affirmed.

Friedlander, J., and Crone, J., concur.