STATE of Indiana, Appellant–Plaintiff,

v.

Jaimee L. HAINES, Appellee–Defendant.

No. 48A02–0205–CR–421.

Court of Appeals of Indiana.

Sept. 12, 2002.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney For Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, the State of Indiana (the State), appeals the trial court's grant of Appellee Defendant's, Jaimee L. Haines (Haines), Motion to Suppress.

We affirm.

### ISSUE

The State raises one (1) issue on appeal, which we restate as follows: whether the trial court erred in granting Haines' Motion to Suppress.

### FACTS AND PROCEDURAL HISTORY

On March 16, 2001, the following probable cause hearing took place:

Q Will you state your name for the record, please.

A William Stephon Blackwell [ (Blackwell) ].

Q And where are you employed, Sir?

A Madison County Sheriff's Department.

Q And in your capacity with the Madison County Sheriff's Department, you [are] involved with the investigation of narcotics offense[s], is that correct?

A That's correct.

Q   And we're here to obtain a search warrant for a residence located at 411 E. 36th Street, Anderson, Madison County, State of Indiana, correct?

A   That's correct.

Q   And who is it that lives at that residence?

A   James Lewis [ (Lewis) ].

Q   And you had an occasion to take [Lewis] into custody this morning, is that correct?

A   That's correct.

Q   And, if you would, how did you come about, describe how you came about taking [Lewis] into custody this morning, what that involved.

A   We went to the Best Inns Hotel from information we had received from a reliable informant, to serve a warrant on a Megan Slowinski. Once there, Megan wasn't in the hotel room. Kevin Burns was, Megan's boyfriend.

Q   Okay.

A   A known crack user.

Q   And you made contact with him in that motel room, is that correct?

A   That's correct.

Q   And through discussions with him, you learned that an individual was en route to the hotel to make a delivery of cocaine. Is that correct?

A   That's correct.

Q   And you then set up your investigation to catch this person delivering the cocaine.

A   That's correct.

Q   Did you know who that person was at that time?

A   At that time, no.

Q   And did, in fact, someone come to the motel room then and deliver the cocaine?

A   Yes, he did.

Q   And who was that?

A   [Lewis].

Q   And he made a delivery of cocaine that's been confirmed to be cocaine.

A   Yes. Crack cocaine, it was field tested.

Q   And he was subsequently then taken into custody, advised of his rights and interviewed, is that correct?

A   That's correct.

Q   And during the course of this interview, did you determine where he had just c[o]me from when he came to make this delivery?

A   Yes, he stated to me that [he] and his girlfriend had just left 411 East 36th Street.

Q   And that address that he had just left from is also known to you or through your office because of other investigations, is this correct?

A   That's correct.

Q   And do you have information or have you obtained information from informants that have proven reliable in the past about drug transactions being made out of that location?

A   Yes, I have[.]

Q   And, if you would, just briefly describe some of the incidents that you have detailed as taking place at that location.

A   One of our reliable informants has purchased crack cocaine from that residence, and we have received information from three or four of our confidential informants that crack cocaine can be purchased out of that residence.

Q   And this last purchase, when was that date, if you remember?

A   I can't remember.

Q   Okay. So . . .

THE COURT: Was it in the last few weeks?

A   Yes, yes.

Q And this reliable informant is the same informant that has given information here just in the past few days that led to another arrest. Is that correct?

A That's correct.

Q So, it's your belief that [Lewis] just left this residence with the cocaine and made this delivery that you intercepted this morning. Based upon that and the information that you've received in the past from informants buying directly out of that house, you're wanting to search that residence for the presence of any crack cocaine or proceeds from crack sales. Is that correct?

A That's correct.

. . .

**THE COURT:** Show probable cause for the issuance of a search warrant. Search warrant is hereby issued for a single family residence located at 411 East 36th Street in Anderson, Madison County, Indiana. This is a duplex and the address 411 is on the west side of the building, and it's marked?

**[BLACKWELL]:** Yes.

**THE COURT:** 411 is marked, and the warrant is for the purpose of searching for and seizing, if found, cocaine, crack cocaine, other illicit drugs, paraphernalia, ledgers, money derived from the sale of drugs, all as per written warrant issued this date at about 12:05 p.m. Record closed.

(Appellant's App. pp. 6–11).

As a result of the search of 411 East 36th Street, the following items were seized:

1:04 Grey Razor Blade Dispenser

1:05 9mm Glock Handgun (black) Serial Number AUF712 and magazine with 8 rounds

1:09A Check # 834 From Kevin Byrne[,] Blank check for $150.00 and [Haines'] Indiana ID Card.

1:09B Chills rolling machine (clear plastic) logo "Chills/They are among us"

1:14 Blue Frame picture of M/B holding baby

1:21 Silver Case containing a[sic] blue and green zip lock baggies and 1 oval pill ["]ultram"

1:27 Blue metal pipe

1:28 Small white dinner plate w/ residue and razor blade

1:29 Blue Pocket–Tech 120 electronic scale Gram Precision

1:31A Green Kitchen plate with residue

1:31B Oven originals measuring cup (glass) with residue

1:32 Clear Baggy w/ white residue

1:33 Pocket–Tech lid to Electronic Scale

1:38 Clear Baggy with green leafy plant substance and zig zag rolling papers

1:40 Kitchen beveled Glass

(Appellant's App. p. 12). Additionally, on April 5, 2001, the State filed the following charges against Haines, a resident of 411 East 36th Street: Count I, possession with intent to deal cocaine, a Class B felony; Count II, maintaining a common nuisance, a Class D felony; Count III, possession of a legend drug, a Class D felony; and Count IV, possession of marijuana, a Class A misdemeanor.

On October 15, 2001, Haines filed a Motion to Suppress Evidence and to Dismiss. In her motion, Haines argued that the arresting officers failed to advise her of her rights. She also argued that the information given to procure the search was stale and misleading. Consequently, Haines maintained that the search warrant was improper and any evidence procured

by it must be suppressed. On October 18, 2001, the State filed its Answer to Defendant's Motion to Suppress and Motion to Compel Answers.

On December 14 and 27, 2001 and January 3, 2002, a hearing was held on Haines' Motion to Suppress. On December 27, 2001, Blackwell testified. On direct examination, the following exchange took place between the State and Blackwell:

Q   [Blackwell], Detective Early has testified that he had prior to March the 16th an informant that had proven reliable to him in the past and told him he had made a purchase of crack cocaine at 411 East 36th Street. Were you aware of that information?

A   Yes I was.

Q   Did you at that time know the identity of the informant?

A   Not at that time.

Q   And you testified for the probable cause for the search warrant based upon the arrest of [Lewis] on March 16th, is that correct?

A   That is correct.

Q   At the point that you made contact with [Lewis] in the room did you inquire of him as to where he had just come from?

A   Yes I did.

Q   And what did he tell you?

A   His girlfriend's house.

Q   And did he give you an address?

A   411 East 36th Street.

Q   And prior to March the 16th of 2001, did you have information from sources of your own[,] independent of Detective Early[,] about 411 East 36th Street?

A   That is correct.

Q   Approximately how many sources?

A   Three (3) to four (4).

Q   At the time this occurred, did you have any information ... strike that, these persons that you are referring to were they just informants, sources of information for you?

A   That is correct.

Q   Have they ever proven or had you ever used them as reliable confidential informants in the past?

A   No, I hadn't.

Q   So these were just sources of information?

A   Sources of information of the informants, yeah....

(Tr. pp. 52–54). On cross examination, Haines' counsel elicited the following information from Blackwell:

Q   Okay. You also advised Judge Carroll that there were other investigations going on with regard to the 411 East 36th Street, is that correct, and in your testimony on the search warrant?

A   I think that was reference to Prosecutor Chambers about investigate, when asked of the investigation because I didn't know who lived there at that time but I had received information about the address at 411 East 36th Street.

Q   And so there were no criminal investigations ongoing [at] that residence at that time[,] were there?

A   I am kind of confused.

. . .

Q   And that address [Lewis] had just left from is also known to you or to your office because of other investigations?

A   Other investigations, information, that is correct.

Q   What other investigations at 411 East 36th Street were there?

A   There was information that I had received about the address. I didn't know who lived at that address. I think Mr. Chambers asked me.

Q   Okay, but there were no criminal investigations ongoing?

A   That is correct.

. . .

Q   ... Now you did testify before Judge Carroll that within the last fourteen (14) days crack had been purchased from that residence, did you not?

A   I would like to see it, I don't remember saying the last fourteen (14) days.

Q   Sure. Excuse me, within the last few weeks?

A   Yeah it is in there. It says that.

Q   You said, when he asked you, "When was the last purchase?" You said, "I can't remember." The Court says, "Was it within the last few weeks?" And you said, "Yes."

A   That would have been the information that I received from Detective Early.

Q   Detective Early told you the buy was within the last few weeks?

A   Within the last ... the information that I received from Detective Early.

. . .

Q   What does a few mean to you [Blackwell]?

A   What does a few mean to me?

Q   Yes?

A   Not a whole lot.

. . .

JUDGE:  Well what does it mean when the Judge said, "Was it in the last few weeks", and you said, "Yes"? How many weeks would that be?

A   Anywhere from two (2) to (6) I suppose.

(Tr. pp. 59–60, 64–66).

On April 4, 2002, the trial court granted Haines' Motion to Suppress. On April 16,

2002, the State filed a Motion to Certify for Interlocutory Appeal and Stay of Proceedings. On April 22, 2002, the trial court granted the State's motion.

This appeal followed.

## DISCUSSION AND DECISION

The State argues that the trial court erred in granting Haines' Motion to Suppress. We disagree.

Ind.Code § 35–33–5–2 provides:

(a) Except as provided in section 8 of this chapter, no warrant for search ... shall be issued until there is filed with the judge an affidavit: [1]

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

. . .

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

. . .

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

(b) When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

Nonetheless, this code section is applicable to the present case.

1. We recognize that there was a probable cause hearing rather than a probable cause affidavit filed with the trial court in this case.

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

"Upon receiving a request for a search warrant, the task of the issuing magistrate is to make a common sense determination, based on the totality of the circumstances, that there is a fair probability that a particular place contains evidence of a crime." *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997).

■ When a search warrant is issued in this state, both federal constitutional requirements and the express statutory terms of I.C. § 35–33–5–2 must be met. *Id.* at 98. A reviewing court is to focus on whether a "substantial basis" existed for a warrant authorizing the search or seizure, and doubtful cases are to be resolved in favor of upholding the warrant. *Id.* A "reviewing court" includes both the trial court on a motion to suppress and the appellate court reviewing that decision. *Id.* The appellate court reviews the trial court's "substantial basis" determination under a *de novo* standard of review. *Id.* "It is clear that substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination." *Id.* at 99.

Here, the State maintains that Blackwell's testimony at the probable cause hearing "gave many indicia that the hearsay testimony was reliable." (Appellant's Br. p. 5). The State asserts that the reliable confidential informant, as well as three (3) or four (4) other confidential informants, indicated that crack cocaine could be purchased at 411 East 36th Street. The State contends that this information, coupled with the fact that Lewis had been arrested for intending to sell

crack cocaine,[2] indicated the reliable nature of the hearsay.

■ "The general rule is that stale information cannot support a finding of probable cause. Stale information only gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved." *Raymer v. State*, 482 N.E.2d 253, 255 (Ind.1985). In the present case, the information obtained from the reliable confidential informant was stale. At the hearing on Haines' Motion to Suppress, Blackwell testified that the reliable confidential informant purchased crack cocaine at 411 East 36th Street anywhere from two (2) to six (6) weeks prior to the probable cause hearing. The items to be obtained in the search were items that could be easily concealed and moved, i.e. drugs and money. *See id.* While the exact moment information becomes stale cannot be precisely determined, we find that a crack cocaine purchase that took place two (2) to six (6) weeks prior to the probable cause hearing is a substantial amount of time. In fact, we find that the time is too substantial to support a finding of probable cause that crack cocaine could be found at that residence. *See id.* It only gives rise to a mere suspicion. *See id.*

As for the three (3) or four (4) other confidential informants, Blackwell testified at the probable cause hearing that these confidential informants stated that crack cocaine could be purchased from 411 East 36th Street. He did not state that these confidential informants actually purchased crack cocaine from the residence, nor did he indicate a time frame as to when he was given this information. Additionally, we are unable to discern how long these confidential informants were in possession of

---

**2.** Blackwell testified at the probable cause hearing that Lewis stated that he had come

from 411 East 36th Street prior to his arrest.

such knowledge before they conveyed it to Blackwell. Moreover, Blackwell testified at the hearing on Haines' Motion to Suppress that the three (3) or four (4) other confidential informants were not reliable confidential informants, but only sources of information. Consequently, this hearsay cannot be deemed as credible, nor can we say that the totality of the circumstances corroborates this hearsay. *See* I.C. § 35–33–5–2(b)(1)(2).

We also note that Blackwell misled the trial court at the probable cause hearing. When asked, "[a]nd that address [411 East 36th Street] that he [Lewis] had just left from is also known to you or through your office because of other investigations, is this correct," Blackwell replied, "[t]hat's correct." (Appellant's App. pp. 8–9). At the hearing on Haines' Motion to Suppress, Blackwell testified that there was not a criminal investigation of the residence at the time of the probable cause hearing or at any time before the probable cause hearing. He testified that when he was asked about an investigation of the residence at the probable cause hearing, he thought the question was in reference to the information that he received about the residence, and not an actual investigation. This was not clear at the probable cause hearing. By using the term "investigation," it is likely that the trial court understood that the residence was under official police examination. It is less likely that the trial court understood that the residence was simply the subject of rumors.

When focusing on reasonable inferences drawn from the totality of the circumstances, we cannot find that evidence supports the trial court's determination to issue a search warrant for 411 East 36th Street. *See* I.C. § 35–33–5–2; *Houser*, 678 N.E.2d at 98–99.

Finally, the State argues that the "evidence collected pursuant to the search warrant should be admitted because regardless of whether or not the warrant was defective, and it was not, the officers used the warrant in objective good faith." (Appellant's Br. p. 7). We disagree.

In *Newby v. State*, 701 N.E.2d 593, 602–03 (Ind.Ct.App.1998), this court held, in pertinent part, as follows:

> Under the exclusionary rule, evidence obtained through an illegal search and seizure is inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Callender v. State*, 193 Ind. 91, 138 N.E. 817 (1923). However, the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984); *Jaggers* [*v. State*, 687 N.E.2d 180, 184 (Ind.1997)]. The good faith exception has been codified at Indiana Code § 35–37–4–5(a), which provides that "the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith."

> . . .

> The good faith exception cannot be so broadly construed as to obliterate the exclusionary rule. *Dolliver v. State*, 598 N.E.2d 525, 529 (Ind.1992). Accordingly, certain police conduct does not qualify for this exception, including where: (1) the magistrate is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard for the truth, or (2) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence unreasonable.

*Jaggers,* 687 N.E.2d at 184 (citing *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699); [*State v. Johnson,* 669 N.E.2d 411, 412 (Ind.Ct.App.1996), *trans. denied*].

■ At the probable cause hearing, Blackwell testified that a reliable confidential informant purchased crack cocaine from 411 East 36th Street. He failed to tell the trial court that the reliable confidential informant purchased crack cocaine from the residence anywhere from two (2) to six (6) weeks prior to the probable cause hearing. This information was stale. *See Raymer,* 482 N.E.2d at 255. Furthermore, the information from the other confidential informants does not constitute reliable hearsay, as these confidential informants were never used as reliable confidential informants. *See* I.C. § 35–33–5–2(b). They were only used as sources of information. Finally, Blackwell testified at the probable cause hearing that there was an investigation of the residence. However, at the hearing on Haines' Motion to Suppress, he testified that there was not a criminal investigation of the residence at the time of the probable cause hearing or at any time before the probable cause hearing. With the above in mind, we find that Blackwell's testimony misled the trial court. *See Newby,* 701 N.E.2d at 602. Thus, we cannot find that the good faith exception applies. *See id.*

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted Haines' Motion to Suppress.

Affirmed.

MATTINGLY–MAY and ROBB, JJ., concur.